NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DUANE LABA, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 14 C 4091 |
| | ) | |
| CHICAGO TRANSIT AUTHORITY, | ) | |
| a municipal corporation, SARAH GUIDONE, | ) | |
| HENDRIK "HAL" WOODS, PARAS | ) | |
| BHAYANI, KEVIN LOUGHNANE and | ) | |
| FORREST CLAYPOOL. | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION**

CHARLES P. KOCORAS, District Judge:

This matter comes before the Court on the motion of Defendants Chicago

Transit Authority (the "CTA") and the individual defendants Sarah Guidone

("Guidone"), Hendrik "Hal" Woods ("Woods"), Kevin Loughnane ("Loughnane")

and Forrest Claypool ("Claypool")[1] (the "Individual Defendants") (collectively

"Defendants") to dismiss the amended complaint brought by Plaintiffs Duane Laba,

Duffy McCann ("McCann"), Julia Berkowitz, Steve Affarano and Robert Schak

(collectively "Plaintiffs") pursuant to Federal Rule of Civil Procedure 12(b)(6). For

---

[1] Service has yet to be effectuated on Defendant Paras Bhayani and he does not move to dismiss the
Complaint. Plaintiffs have recently been provided information from Defendants in an attempt to serve
Bhayani. If Plaintiffs fail to properly serve Bhayani, we will act accordingly pursuant to Federal Rules of
Civil Procedure.

the reasons set forth below, Defendants' motion to dismiss is granted in part and denied in part.

## BACKGROUND

For the purposes of the instant motion, the following well-pleaded allegations derived from Plaintiffs' third amended complaint (the "Complaint") are accepted as true. The Court draws all reasonable inferences in favor of Plaintiffs. Plaintiffs allege that their former employer, the CTA, videotaped them from at least September 2013 to October 2013 in the Electrical Room at work, where they were permitted to change their clothes, without Plaintiffs' knowledge or consent. Plaintiffs allege that over eighty hours of footage was secretly recorded of them. The Individual Defendants named in the Complaint were allegedly involved with the instruction and installation of the video cameras, and the review of the footage. Plaintiffs identify Bhayani, Loughnane and Claypool as supervisors. As a result of the video footage, Plaintiffs were terminated.

On January 16, 2015, Plaintiffs filed their six-count Complaint alleging: (i) the Individual Defendants violated 42 U.S.C. § 1983 ("Section 1983") under their Fourth Amendment rights to privacy (Count I); (ii) the Individual Defendants violated state law for intrusion upon seclusion (Count II); (iii) Bhayani, Loughnane and Claypool violated Section 1983 in their supervisory capacity (Count III); (iv) a *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978) (a "*Monell* claim") against the

CTA for a violation of Plaintiffs' Fourth Amendment rights (Count IV); (v) that the

CTA is liable pursuant to state law indemnification principles under Section 9-102 of

the Local Government and Governmental Employees Tort Immunity Act (the "Tort

Immunity Act") for its employees' violations while they acted within the scope of

their employment (Count V); and (vi) that the CTA is liable for the actions of its

agents, the Individual Defendants, under the doctrine of *respondeat superior* for the

state law violations (Count VI). On March 31, 2015, Defendants moved to dismiss

pursuant to 12(b)(6).

## LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint

and not the merits of the case. *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d

873, 878 (7th Cir. 2012). The allegations in a complaint must set forth a "short and

plain statement of the claim showing that the pleader is entitled to relief." Fed. R.

Civ. P. 8(a)(2). A plaintiff need not provide detailed factual allegations but must

provide enough factual support to raise her right to relief above a speculative level.

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim must be facially

plausible, meaning that the pleadings must allow the court to draw the reasonable

inference that the defendant is liable for the purported misconduct. *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009). The claims must be described "in sufficient detail to give

the defendant fair notice of what the claim is and the grounds upon which it rests."

*EEOC v. Concentra Health Services*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting

*Twombly*, 550 U.S. at 570). "Threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements," are insufficient to withstand a motion to

dismiss under Rule 12(b)(6). *Id.* at 678.

## DISCUSSION

**I. Federal Claims**

**A. Count IV: *Monell* Claim Against the CTA**

Defendants move to dismiss Count IV, arguing that Plaintiffs have failed to

establish a *Monell* claim against the CTA as there is no allegation that Claypool, the

CTA President, has final policymaking authority. Plaintiffs allege that Claypool, as

the CTA President, was an official policymaker for the CTA and he instructed and

delegated the task to install the video cameras to other Individual Defendants.

Defendants argue that the fact that Claypool has "decision-making" authority does not

render that official a final policymaker. It is well settled that a municipality is not

vicariously liable under Section 1983 for the actions of its employees unless the

employee acted pursuant to a municipal policy or custom. *Monell*, 436 U.S. at 658.

When a plaintiff brings a *Monell* claim, a municipal entity like the CTA is only

responsible for "[its] own illegal acts." *Connick v. Thompson*, 131 S.Ct. 1350, 1359

(2011). A plaintiff may establish an official policy or custom by showing: (i) an

express policy that, when enforced, causes a constitutional deprivation; (ii) a

widespread practice that, although not authorized by written law or express municipal

policy, is so permanent and well-settled as to constitute a "custom or usage" with the force of law; or (iii) the act of a person with final policy-making authority. *Guzman v. Sheahan*, 495 F.3d 852, 859 (7th Cir. 2007). The determination of whether a person has policymaking authority is a question of state law, and is to be decided by the Court. *Valentino v. Vill. of S. Chicago Heights*, 575 F.3d 664, 675 (7th Cir. 2009).

Plaintiffs plead in their Complaint that a single decision by a municipal policy maker can give rise to liability under Section 1983 and do not allege that what occurred was an express policy or widespread practice. After review, the well-pleaded allegations in Count IV will stand. Plaintiffs have pleaded enough factual content that allows the Court to draw the reasonable inference that Claypool, as the CTA President, may have possessed, or had been delegated, final policy-making authority that resulted in the violation of Plaintiffs' constitutional rights. *See Fabiano v. City of Palos Hills*, 336 Ill. App. 3d 635, 656 (2002). Discovery will show the relationship between the CTA Board and Claypool, including whether the Board delegated Claypool the power to install and use the video cameras or if the CTA Board conferred the final policy-making authority to someone else to establish official municipal policy. *See Radic v. CTA*, 73 F.3d 159, 161 (7th Cir. 1996) (finding that the plaintiff "needed to show that the Board somehow acted to confer policymaking authority on a particular official before his or her actions could be considered policy decisions); *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 126 (1988) ("If the mere exercise of discretion by an employee could give rise to a constitutional

5

violation, the result would be indistinguishable from *respondeat superior* liability").

These facts will assist the Court in determining whether Claypool had final

policymaking authority, but at this present posture, and based on the allegations in the

Complaint, it is plausible that CTA President Claypool was delegated final

policymaking authority.  For this reason, the instant matter is distinguishable from the

main case cited by Defendants, *Ball v. City of Indianapolis*, because Claypool served

in such a high leadership position for the CTA.  *Ball*, 760 F.3d 636, 643 (7th Cir.

2014) (where the Seventh Circuit held that the plaintiff's *Monell* claim failed because

he supplied no reason to believe that an ordinary police officer was a final

policymaker when he drafted and signed a probable cause affidavit).  Therefore, we

deny Defendants' motion to dismiss Count IV.  The sufficiency of Plaintiffs' alleged

constitutional violations is discussed below.

**B. Counts I: Section 1983 Claims Against the Individual Defendants**

The Court will now address Defendants' argument that Plaintiffs have failed to

sufficiently plead an unreasonable workplace search and seizure violation under the

Fourth Amendment to support their Section 1983 claims.  Defendants state that the

Individual Defendants are entitled to qualified immunity and Plaintiffs have failed to

meaningfully respond to their defense of qualified immunity.

Section 1983 provides a private right of action to remedy violations of

constitutional and federal statutory rights committed under color of law.  42 U.S.C. §

1983.  To state a claim under Section 1983, Plaintiffs must allege that each defendant

was personally involved in the alleged constitutional deprivation. *See Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). To be personally responsible, an official must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye. *Id.*

"Qualified immunity is an immunity from suit rather than a mere defense to liability." *McGreal v. AT&T*, 892 F.Supp.2d 996, 1011 (N.D. Ill. 2012) (quotations omitted). Qualified immunity shields government officials from liability where "their conduct does not violated clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Supreme Court has held that district courts have the discretion to address these questions of qualified immunity in whatever order they deem appropriate. *Pearson*, 555 U.S. at 236. Courts often address the second prong first in order to avoid having to pass on the constitutionality of an officer's particular actions—for if a right is not clearly established, a reasonable officer cannot be said to have known about it. *See Forman v. Richmond Police Dep't*, 104 F.3d 950, 958 (7th Cir. 1997). Addressing the second prong first allows courts to dismiss cases on qualified immunity grounds pursuant to Rule 12(b)(6). *See Haley v. City of Boston,* 657 F.3d 39, 47 (1st Cir. 2011) (Post-*Pearson*, "[i]f it is plain that a constitutional right is not clearly established, a court may grant the requested immunity without undertaking the essentially academic

exercise of ascertaining whether the specific facts depict a constitutional violation.")

(quoting *Pearson*, 555 U.S. at 236-37) (internal quotation marks omitted). The

plaintiff has the burden of proving that the right allegedly violated was clearly

established. *Forman*, 104 F.3d at 957-58. To meet this burden, the plaintiff need not

point to a case finding the same exact action to be unlawful or a case that is "on all

fours" with the present set of facts and circumstances. *Id.* at 958. A clearly analogous

case decided before the officer's action or inaction in the present case is sufficient to

confirm that a right is clearly established. *Id.* Examined in light of an analogous case,

the unlawfulness of the officer's actions must have been "apparent" at the time he

took them. *See Anderson v. Creighton*, 483 U.S. 635, 640 (1987) ("the actions the

[Plaintiffs] allege [Defendants] to have taken are actions that a reasonable officer

could have believed lawful ... then [Defendants are] entitled to dismissal prior to

discovery.").

In *O'Connor v. Ortega*, a plurality of the Supreme Court found that a warrant or

probable cause standard does not apply when a government employer searches an

employee's office, desk, or file cabinet to retrieve government property or to

investigate work-related misconduct. 480 U.S. 709, 719-26 (1987). Instead, a

workplace search is legal if it is "reasonable [ ] under all the circumstances." *Shields*

*v. Burge*, 874 F.2d 1201, 1203 (7th Cir. 1989) (quoting *O'Connor*, 480 U.S. at 725-

26). The plurality in *O'Connor* also held that determining whether a governmental

employer's search or seizure is reasonable depends on two factors: (i) whether the search was "justified at its inception;" and (ii) whether the search "as actually conducted was reasonably related in scope to the circumstances which justified the interference in the first place." *O'Connor*, 480 U.S. at 726. Reasonableness is measured on a case-by-case basis and depends upon balancing the public, governmental, and private interests at stake in a given situation. *Shields*, 874 F.2d at 1204.

It is apparent to the Court that *O'Connor* clearly outlines Fourth Amendment workplace violations in the Seventh Circuit. *See Shields*, 874 F.2d 1201, 1203-04 (7th Cir. 1989) (adopting *O'Connor* plurality's reasonableness analysis); *see also United States v. Fernandes*, 272 F.3d 938, 942 (7th Cir. 2001) (noting adoption of *O'Connor* plurality's standard). We find that Plaintiffs have properly alleged that Defendants violated a clearly established constitutional right under the Fourth Amendment by meeting their burden and showing that before the alleged incidents occurred, the right to privacy at the workplace was clearly established in *O'Connor*. Thus, the Court presently denies Plaintiffs' qualified immunity defense.

Defendants provide numerous factual arguments about why Plaintiffs did not have an expectation of privacy in the Electrical Room, including that both sexes were able to access it and multiple employees had keys. As to the reasonableness, Defendants argue that Plaintiffs fail to properly allege that the workplace search was

not justified at its inception and not reasonably related in scope to the circumstances. Addressing Defendants' concerns about whether Plaintiffs have properly pleaded that they had a reasonable expectation of privacy, and the unreasonableness of the search, Plaintiffs do allege that they had a reasonable expectation of privacy in the Electrical Room, where Plaintiffs stored their personal belongings in lockers and changed their clothes. The Electrical Room contained an outside door that locked, three lockers, and the only individuals who possessed keys were Plaintiffs, the CTA locksmiths, the senior-most manager at the facility and the manager of the department. Plaintiffs claim that the Individual Defendants had a duty not to deprive Plaintiffs of their rights to privacy as they used the Electrical Room at work when Defendants caused the filming of Plaintiffs and/or placement of cameras in the Electrical Room. Plaintiffs also allege that the Individual Defendants conducted an unreasonable workplace search and violated the Fourth Amendment when they filmed Plaintiffs without their knowledge or consent. We acknowledge Plaintiffs' unnecessary allegations regarding probable cause, exigent circumstances, and the securement of a warrant. We also have noticed the lack of allegations stating that the search was not reasonably related in scope to the circumstances, which justified the interference in the first place. However, construing the allegations in favor of Plaintiffs, they do allege that they had a reasonable expectation of privacy that Defendants violated and describe how exactly those rights were violated. The reasonableness of the workplace search is dependent on the facts of the individual case, which will materialize in the discovery phase of

litigation. Defendants' factual arguments are currently premature; the evidence will reveal the CTA's reasoning behind the installation of the cameras and what exactly the footage captured. Consequently, the Court denies Defendants' motion to dismiss Count I.

### C. Count III: Section 1983 Claims Against Supervisors

Supervisors "need not participate directly in the deprivation [of civil rights] for liability to follow under § 1983." *Backes v. Village of Peoria Heights, Ill.*, 662 F.3d 866, 869-70 (7th Cir. 2011). Indeed, so long as the supervisors "know about the conduct and facilitate it, condone it, or turn a blind eye for fear of what they might see," they may be held liable. *Id.*, at 870 (citing *Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001)). In other words, supervisors may be held liable under Section 1983 for the actions of their subordinates if they acted "either knowingly or with deliberate, reckless indifference." *Backes*, 662 F.3d at 870.

In Count III, Plaintiffs allege that Bhayani, Loughnane and Claypool enjoyed a supervisory capacity at the CTA and approved, facilitated, condoned and ordered the actions of Guidone and Woods in installing the hidden cameras for the alleged purpose of secretly filming Plaintiffs. The conclusory allegations in Plaintiffs' Complaint, by themselves, would not be sufficient to raise Plaintiffs' supervisory liability claim above the speculative level. However, in conjunction with the well-pleaded allegations, this claim survives. Plaintiffs specify each Defendant's

supervisory role and claim that these supervisors allegedly communicated together in person and knew that the installation was a violation of Plaintiffs' rights to privacy, but still decided to allow the filming to occur.  We may draw the reasonable inference that, by virtue of their positions as supervisors, they knew about the installation of the cameras and subsequently may have known that it was a violation of Plaintiffs' rights to privacy.  This is enough to plead knowledge, or at the very least, establish that it is plausible that these Defendants conducted, facilitated or condoned the conduct at issue.  Thus, the Court denies Defendants' motion to dismiss Count III.

## II. State Law Claims

### A. Count II: Intrusion Upon Seclusion Against the Individual Defendants

In Count II, Plaintiffs assert a state law claim for intrusion upon seclusion against all of the Individual Defendants.  Defendants argue that Count II should be dismissed because Plaintiffs have failed to sufficiently plead an unreasonable workplace seizure violation under the Fourth Amendment and the Individual Defendants are entitled to qualified immunity.  Defendants also contend that Plaintiffs fail to sufficiently plead any actionable damages.

Illinois identifies liability for invasion of privacy of "one who intentionally intrudes … upon the solitude [of another]…if the intrusion would be highly offensive to the reasonable person" as one of the four torts found under the umbrella of the "right to privacy."  *Lawlor v. North American Corp. of Illinois*, 983 N.E.2d 414, 424

(Ill. 2012) (quoting RESTATEMENT (SECOND) OF TORTS § 652B (1977)). The third

element of the tort, the privacy element, is considered the predicate for the other

elements. *Jacobson v. CBS Broad., Inc.*, 19 N.E. 3d 1165, 1181 (2014). "The nature

of this tort depends upon some type of highly offensive prying into the physical

boundaries or affairs of another person. The basis of the tort is not publication or

publicity. Rather, "the core of this tort is the offensive prying into the private domain

of another." *Lovgren v. Citizens First Nat'l Bank of Princeton*, 126 Ill.2d 411, 416-17

(1989); *see also Vega v. Chi. Park Dist.*, 958 F.Supp.2d 943, 959 (N.D. Ill. 2013)

(quoting *Lovgren*, 126 Ill.2d at 417). "Examples of prying into private matters are

opening a person's mail, searching a person's safe or wallet, and reviewing a person's

banking information." *Vega*, 958 F.Supp.2d at 959 (citing *Lawlor*, 983 N.E.2d at

424). "Private facts," for purposes of the tort of public disclosure of private facts

under Illinois law, are intimate personal facts, and thus, matters of public record,

including information such as a person's name, address, and age, do not qualify.

*Huon v. Breaking Media, LLC*, No. 11 C 03054, 2014 WL 6845866 (N.D. Ill. Dec. 4,

2014).

The Court finds that Plaintiffs' allegations support the possibility that

Defendants intentionally pried into Plaintiffs' private and personal matters when they

filmed Plaintiffs without their knowledge or consent. Plaintiffs are not complaining

about the publication of the footage to others, but rather the filming itself. *See*

*Lovgren*, 126 Ill. 2d at 417 (finding that the plaintiff had failed to adequately plead the

13

tort of intrusion into seclusion of another because "the alleged offensive conduct and subsequent harm resulted from the defendants' act of publication, not from an act of prying"). Plaintiffs are correct that the act of secretly filming an employee while he or she is changing clothes is more akin to peering into that employee's home than it is to look at his or her address and telephone number. Additionally, Plaintiffs only allege that they suffered damages as a result of the alleged intrusion. While it is true that Plaintiffs fail to specify the damages as "anguish and suffering," which Defendants claim are the requisite damages necessary for this state law claim to survive, we refuse to dismiss Count II based on the lack of specificity of the type of "damages." We can infer that any reasonable person could have suffered emotional distress or embarrassment after discovering that they were being filmed while changing their clothes at work. *See Browning v. AT & T Corp.*, 682 F. Supp. 2d 832, 838 (N.D. Ill. 2009) (where the court found that the complaint's allegations made clear that plaintiff's embarrassment, stress and inconvenience occurred only when the information was disclosed to others).

For all present purposes, the pleadings satisfy the federal standards and put Defendants on proper notice of the claim in Count II. However, we find that it is a close call as to whether Defendants' actions truly constitute offensive prying into the private domain of another, and we will closely watch how the evidence develops with respect to this claim. The Court will be specifically attentive to whether the Electrical Room primarily served as a locker room and the understanding amongst the CTA

14

employees as to the level of privacy they retained when changing clothes in the Electrical Room. Defendants' motion to dismiss Count II is presently denied.

**B. Count V: Tort Immunity Act Against the CTA**

Under 745 ILCS 10/9-102, Plaintiffs seek indemnification from the CTA for any tort judgment or settlement for compensatory damages for which it or an employee acting within the scope of his employment is liable. Defendants ask the Court to dismiss Count V because the CTA is exempt from the Tort Immunity Act, citing 745 ILCS 10/2-101 where it states "this Act does not apply to any entity organized under or subject to the "Metropolitan Transit Authority Act." Plaintiffs insist that Count V does not fall within the immunity afforded to the CTA by the Tort Immunity Act because the CTA can be liable in indemnification under it. Courts that have considered whether the Tort Immunity Act applies to the CTA and have held that the Act specifically excludes the CTA. *See Olinger v. Doe*, 163 F. Supp. 2d 988, 992 (N.D. Ill. 2001) (citing cases). This is due to "[t]he magnitude of the CTA's operations and its special duty to provide its passengers with the highest degree of care, [which] produced large volumes of personal injury actions and therefore warranted giving the CTA is own protective statute." *Wheatley v. Chicago Transit Auth.*, 289 Ill. App. 3d 60, 63 (1997).

Reviewing the Tort Immunity Act, we do not find any exception allowing a plaintiff to seek indemnification from the CTA. We also cannot find any case law that supports Plaintiffs' claim. Plaintiffs' reliance on *Lara v. CTA*, 05 C 6209, 2007 U.S.

Dist. LEXIS 36509 (N.D. Ill. May 17, 2007), an unpublished decision, is unpersuasive with respect to our decision because the issue of the CTA's exemption under the Tort Immunity Act was never raised by any of the parties, not even the CTA. Besides citing *Lara* and the statute itself, Plaintiffs do not provide any other support for why this claim should survive. Count V is hereby dismissed.

### C. Count VI: *Respondeat Superior* Claim Against the CTA

Defendants argue that Count VI should be dismissed because it is a theory of liability, not a separate cause of action, which cannot survive absent a sufficiently pleaded state law claim. We must clarify that Count VI is a state law *respondeat superior* claim. In Illinois, governmental entities can be responsible for their employees' actions in tort. *See Brown v. King*, 328 Ill. App.3d 717, 723 (Ill. App. Ct. 2002). We have held that Count II, the state law intrusion upon seclusion claim, presently survives, and as a result, Count VI also will stand as it hinges on the intrusion upon seclusion claim.

For the aforementioned reasons, Defendants' motions to dismiss is granted in part and denied in part.

_____
Charles P. Kocoras
United States District Judge

Dated: 6/2/2015