# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

|  |  |  |
|---|---|---|
| DUANE LABA, STEVE AFFARANO, DUFFY MCGANN, ROBERT SCHAK, and JULIA BERKOWITZ, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| CHICAGO TRANSIT AUTHORITY, a municipal corporation, SARAH GUIDONE, HENDRIK"HAL" WOODS, PARAS BHAYANI, KEVIN LOUGHNANE and FORREST CLAYPOOL, | ) ) ) ) ) ) | 14 C 4091 |
| Defendants. _____ | ) ) ) | |
| CHICAGO TRANSIT AUTHORITY, a municipal corporation, | ) ) ) | |
| Counter-Plaintiff, | ) ) | |
| v. | ) ) | |
| DUANE LABA, STEVE AFFARANO, DUFFY MCGANN, ROBERT SCHAK, and JULIA BERKOWITZ, | ) ) ) ) | |
| Counter-Defendants. | ) ) | |

# MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

This matter comes before the Court on the motion of Plaintiffs and Counter-Defendants Duane Laba ("Laba"), Steve Affarano ("Affarano"), Duffy McGann ("McGann"), Robert Schak ("Schak"), and Julia Berkowitz ("Berkowitz") (collectively, "Counter-Defendants") to dismiss Defendant and Counter-Plaintiff Chicago Transit Authority's ("CTA") counterclaim. For the following reasons the motion is granted in part and denied in part.

## BACKGROUND

Counter-Defendants are former employees of the CTA. As employees of the CTA, Counter-Defendants were subject to the rules, policies, and procedures articulated by the CTA's General Rule Book. (Dkt. 98 at ¶ 8). Additionally, Counter-Defendants were subject to the Ethics Ordinance of the CTA, "which provides that CTA employees owe a fiduciary duty to [the] CTA at all times in the performance of their public duties." (*Id*. at ¶ 10). As members of the International Brotherhood of Electrical Workers Local 134 (the "Union"), Counter-Defendants were covered by the collective bargaining agreement ("CBA") between the CTA and the Union. (*Id*. at ¶ 9).

As employees of the CTA, Counter-Defendants were provided with cellular phones that were equipped with a Global Positioning System ("GPS") as a means to "maintain accurate work and time records," and to monitor employee performance.

(*Id*. at ¶ 12). In 2013, the CTA began auditing the GPS records in an attempt to determine employee efficiency. (*Id*. at ¶ 13). Subsequently, the CTA discovered that during work hours Counter-Defendants were using the 480VAC Main Electrical Breaker Room at the CTA's Harlem and Lake Rail Shop ("Electrical Breaker Room") to engage in non-work related activities. (*Id*. at 4-7). The Electrical Breaker Room was not a "designated employee break area or changing room." (*Id*. at ¶ 16).

Some months later, in April of 2014, Counter-Defendants filed a civil suit against the CTA in state court as a result of the CTA's audit, in addition to further investigation of Counter-Defendants' conduct while in the Electrical Breaker Room. The complaint asserted an Illinois state law claim for invasion of privacy, a civil rights claim pursuant to 42 U.S.C. § 1983, and a Fourth Amendment claim alleging that the CTA violated Counter-Defendants' right to be free from unreasonable search and seizure. (Def. Ex. 1 Dkt. 1, at 8-10). On June 3, 2014, the CTA properly removed the case to federal court pursuant to 28 U.S.C. § 1441(b).

## PROCEDURAL HISTORY

After the CTA removed Counter-Defendants' state court case to this Court, in July of 2014, the CTA filed a motion to dismiss Counter-Defendants' initial complaint in its entirety. (Dkt. 17). This Court denied the CTA's motion to dismiss without prejudice and granted Counter-Defendants leave to file an amended complaint. (Dkt. 22). The CTA subsequently moved to dismiss the first amended complaint for failure to state a claim. (Dkt. 27). The CTA's motion to dismiss was granted and the

Court allowed Counter-Defendants leave to file a second amended complaint (Dkt. 39), which they did, on November 21, 2014. (Dkt. 42). The CTA was required to answer Counter-Defendants' second amended complaint or otherwise plead by December 19, 2014. However, on December 17, 2014, the CTA moved to stay the matter in anticipation of the filing of a third amended complaint. (Dkt. 46). The Court granted the CTA's motion to stay the case (Dkt. 50), and Counter-Defendants filed a third amended complaint on January 16, 2015. (Dkt. 52). The CTA then filed a motion to dismiss the third amended complaint for failure to state a claim (Dkt. 61), which was granted in part and denied in part. (Dkt. 78). Thereafter, on August 6, 2015, the CTA filed an answer and a four-count counterclaim. (Dkt. 97-98).

The CTA's counterclaim alleges that Counter-Defendants (i) were unjustly enriched when they "reported [ ] and voluntarily received benefits and compensation for [ ] time that they did not actually work" (Dkt. 98 at ¶ 22); (ii) breached their fiduciary duty "by engaging in unauthorized conduct on company time, overstating their hours[,] and voluntarily accepting compensation and benefits for time they did not actually work," (*Id*. at ¶ 27); (iii) fraudulently misrepresented the number of hours they worked (*Id*. at ¶ 32); and (iv) converted CTA's property by accepting compensation for hours they did not actually work. (*Id*. at ¶¶ 38, 40). Counter-Defendants' motion to dismiss the CTA's counterclaim is now before the Court.

# LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") "tests the legal sufficiency of the complaint and not the merits of the case." *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 878 (7th Cir. 2012). The allegations in a complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A plaintiff need not provide detailed factual allegations but must provide enough factual support to raise her right to relief above a speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim must be facially plausible, meaning that the pleadings must "allow[ ] the court to draw the reasonable inference that the defendant is liable for the" purported misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The claims must be described "in sufficient detail to give the defendant 'fair notice of what the . . . claim is and the grounds upon which it rests.'" *E.E.O.C. v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "[T]o withstand a motion to dismiss[,] a complaint must allege facts sufficiently setting forth the essential elements of the cause of action." *Bell & Howell Fin. Servs. Co., v. St. Louis Pre-Sort, Inc.*, No. 97 C 6063, 1999 WL 35316, at *3 (N.D. Ill. Jan. 11, 1999). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to withstand a motion to dismiss under Rule 12(b)(6). *Iqbal*, 556 U.S. at 678.

## DISCUSSION

## I. Supplemental Jurisdiction

Counter-Defendants have conceded that the CTA's state claims fall under supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a). (Dkt. 110 at 7). We agree that pursuant to 28 U.S.C. § 1367(a) it is proper for this Court to exercise supplemental jurisdiction over the CTA's state law claims because these claims "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). A claim is "so related" as to "form part of the same case or controversy" when the federal law and state law claims "'derive from a common nucleus of operative fact' such that 'the relationship between [the federal] claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional' 'case.'" *Halfman v. Matteson Auto Sales*, No. 12-CV-05999, 2012 WL 5363435, at *1 (N.D. Ill. Oct. 30, 2012) (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)). "A loose factual connection [between the claims] is generally sufficient." *Houskins v. Sheahan*, 549 F.3d 480, 495 (7th Cir. 2008) (quoting *Baer v. First Options of Chi., Inc.*, 72 F.3d 1294, 1299 (7th Cir. 1995)). In the instant case, there is at a minimum "a loose factual connection" between the CTA's state law claims and Counter-Defendants' federal law claims.

The CTA's state law claims are relevant to Counter-Defendants' federal law claim that Counter-Defendants were deprived of their Fourth Amendment Right to

Privacy, because the CTA's allegations in support of their counterclaim necessarily require a review of Counter-Defendants' behavior while they were in the Electrical Breaker Room. Specifically, a court would need to examine the surveillance footage from the surveillance camera located in the Electrical Breaker Room. Indeed, the surveillance camera was put in the Electrical Breaker Room as part of the CTA's investigation of Counter-Defendants' behavior while in that room. Likewise, Counter-Defendants' federal law claim would require review of similar factual matter. Thus, Counter-Defendants' federal law claim and the CTA's state law claims "derive from a common nucleus of operative fact" such that the relationship between these claims results in a conclusion that "the entire action before the court comprises but one constitutional 'case.'" *See Halfman*, 2012 WL 5363435, at *1.

Nevertheless, although Counter-Defendants concede that the Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a), they contend that pursuant to 28 U.S.C. § 1367(c)(1)-(2), this Court should decline to exercise supplemental jurisdiction because the CTA's counterclaim involves novel issues of state law and the CTA's state law claims would predominate over Counter-Defendants' claims. (Dkt. 110 at 7). Counter-Defendants' are correct that pursuant to 28 U.S.C. § 1367(c), this Court "may decline to exercise supplemental jurisdiction over a claim" which it would otherwise have supplement jurisdiction over if: "(1) the claim raises a novel or complex issue of State law" or "(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction . . .". 28 U.S.C.

§ 1367(c)(1)-(2). However, the CTA's counterclaim does not present novel issues of state law, nor would it predominate over Counter-Defendants' claims. Instead, the CTA's counterclaim is sufficiently related as to permit this Court to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

First, the CTA's counterclaim does not involve novel issues of Illinois state law. As Counter-Defendants have accurately noted, there are a "plethora of cases wherein an employer sued a former employee for some combination of unjust enrichment, breach of fiduciary duty, fraudulent misrepresentation, and conversion." (Dkt. 104 at 13). While these cases may not involve an employer who is suing an employee for failure to work the entirety of his or her claimed hours because that employee was engaged in other unauthorized behavior, as is alleged here, the CTA's counterclaim requires this Court to apply settled law to a particular set of facts. *See Bailey v. City of Chi.*, No. 10 C 5735, 2013 WL 5835851, *6 (N.D. Ill. Oct. 30, 2013) (concluding that "an intentional infliction of emotional distress claim arising out of an abusive interrogation" was not a novel issue of law, but rather "a question of applying settled law to the particular facts of [the] case"). Counter-Defendants' argument that Illinois state courts have never applied the law governing unjust enrichment, breach of fiduciary duty, fraudulent misrepresentation regarding overstated compensable hours, and conversion to the circumstances surrounding the instant matter, is therefore, unavailing. Under that reasoning, every plaintiff could make a similar argument, because the facts of every case are unique. *See id.* Accordingly, this Court will not

exercise its discretionary power, pursuant to 28 U.S.C. 1367(c)(1), to decline supplemental jurisdiction over the CTA's counterclaim.

Second, the Court disagrees with Counter-Defendants' argument that the CTA's state law claims would predominate over Counter-Defendants' claims. (Dkt. 104 at 13). As previously noted, Counter-Defendants conceded that supplemental jurisdiction pursuant to 28 U.S.C. 1367(a) is appropriate as the Counter-Defendants' and the CTA's claims "derive from a common nucleus of operative fact." While Counter-Defendants state that "the CTA's claims would require vastly different and larger quantities of proof than required to prove [Counter-Defendants'] claims" (Dkt. 110 at 7), this Court finds that Counter-Defendants' Fourth Amendment Right to Privacy claim is intricately connected to the CTA's allegations that Counter-Defendants engaged in unauthorized behavior while in the Electrical Breaker Room.

While proof of the CTA's claims may involve some discovery that is different from that needed to prove Counter-Defendants' claims, Counter-Defendants' Fourth Amendment Right to Privacy claim and the CTA's state law claims are not so different from one another that the CTA's counterclaim should be brought in state court while Counter-Defendants' claims proceed in federal court. *See Bailey*, 2013 WL 5835851, at *7 ("The state claims are based on the same conduct as the federal claims. Remanding [the] state law claims would only serve to force the state court to duplicate this Court's efforts and delay the ultimate adjudication of this case."). Furthermore, "district courts can decline to exercise jurisdiction when it would

undermine the principles of judicial economy, convenience, fairness, and comity which underlie the pendent jurisdiction doctrine." *Scheiner v. Midas, Inc.*, No. 12 C 02653, 2013 WL 329006, at *10 (N.D. Ill. Jan. 29, 2013) (citing *City of Chi. v. Int'l Coll. of Surgeons*, 522 U.S. 156, 158 (1997)). In this Court's view, declining supplemental jurisdiction would "undermine the principles of judicial economy, convenience, fairness, and comity." Rather, judicial economy would best be served by exercising supplemental jurisdiction and allowing the CTA's counterclaim to proceed as part of the instant litigation in one forum.

## II. Preemption

Counter-Defendants further argue that the CTA's counterclaim is preempted under the Labor-Management Relations Act ("LMRA"), 29 U.S.C. § 141 *et. seq*. Under the LMRA, "[t]he term 'employer' includes any person acting as an agent of an employer, directly or indirectly, but shall not include the United States or any wholly owned Government corporation, or any Federal Reserve Bank, or any State or political subdivision thereof . . .". 29 U.S.C. § 152(2). The CTA is a 'political subdivision' created by the Metropolitan Transit Authority Act. 70 Ill. Comp. Stat. Ann. 3605/1-3; *see also* Dkt. 98 at ¶ 1. Therefore, the LMRA cannot preempt the CTA's state law claims, as the LMRA does not apply to the CTA.

Tacitly conceding this point, Counter-Defendants next argue that the CTA's claims are bared by the Illinois Public Labor Relations Act ("IPLRA"). 5 ILCS 315. Under Section 8 of the IPLRA, the collective bargaining agreement ("CBA"), which

is "negotiated between the employer and the exclusive representatives," must provide a grievance resolution procedure. 5 ILCS 315/8. The grievance resolution procedure applies to "all employees in the bargaining unit and shall provide for final and binding arbitration of disputes concerning the administration or interpretation of the agreement unless mutually agreed otherwise." *Id.* Accordingly, Counter-Defendants argue, "the CTA's counterclaim . . . falls squarely within the arbitration provision of the IPLRA." (Dkt. 110 at 2). We disagree.

Section 8 of the IPLRA requires "final and binding arbitration of disputes concerning the administration or interpretation" of the CBA. 5 ILCS 315/8. The CBA states

> the Authority and the Union agree to meet and deal with each other through their duly accredited representatives on all differences and grievances, including the interpretation of this Agreement [the CBA], and should there be any difference or grievances that cannot be amicably adjusted between the respective properly accredited representatives of the Authority and the Union, the same shall be submitted to Arbitration.

(Def. Ex. A Dkt. 104-1, at 49).[1] Grievance is defined as "any dispute or difference between the Authority and the employee or a group of employees, or between the

---

[1] The Court notes that on a motion to dismiss pursuant to Rule 12(b)(6) the Court may consider "the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Geinosky v. City of Chi.*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). In the instant matter, the CBA was attached to Counter-Defendants' motion to dismiss; however, the CTA referred to the CBA in its counterclaim. (Dkt. 98 at ¶ 9). Therefore, the Court is permitted to review the CBA in addressing Counter-Defendants' argument that the CTA was required to submit to binding arbitration prior to filing their counterclaim.

Authority and the Union with respect to the meaning, interpretation or application of the terms and provisions of this agreement." (Def. Ex. A Dkt. 104-1, at 50).

"Arbitration is a matter of contract, and parties may only be compelled to arbitrate issues they have agreed to arbitrate." *Hospira, Inc. v. Therabel Pharma N.V.*, No. 12 C 8544, 2013 WL 3811488, at *10 (N.D. Ill. July, 19, 2013) (citing *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986)). Therefore, contrary to Counter-Defendants' claim that "the CTA was required to submit to 'final and binding arbitration'" disputes that involve wages and hours, the language of the CBA demonstrates that the CTA has not agreed to arbitrate disputes involving employees who voluntarily receive benefits and compensation for time that they did not actually work. Moreover, as the CTA correctly argues, Section 8 of the IPLRA requires arbitration of "disputes concerning the administration or interpretation of the agreement." 5 ILCS 315/8. While the CBA describes employee pay schedules, compensation for various employee positions, and expectations regarding employees' schedules, there is no discussion regarding how to address a situation like the one described in the CTA's counterclaim. Furthermore, although a resolution of the CTA's counterclaim may require a court to reference the CBA, it would not require "interpretation or administration" of the CBA. Therefore, the CTA is not subject to the grievance resolution procedure of the IPLRA.

Accordingly, this Court concludes that supplemental jurisdiction is proper, and that the CTA's counterclaim is not preempted by the LMRA or the IPLRA. The

Court must now address Counter-Defendants' argument that the CTA has failed to properly state a claim for relief pursuant to Rule 12(b)(6).

## III. Failure to State A Claim Pursuant to Rule 12(b)(6)

### A. Unjust Enrichment

The CTA alleges that Counter-Defendants were unjustly enriched when they "voluntarily received benefits and compensation for[ ] time that they" reportedly worked, but in fact were not actually working. (Dkt. 98 at ¶ 22-23). Counter-Defendants argue that recovery for unjust enrichment is unavailable as the employment relationship between the CTA and Counter-Defendants is governed by an express contract, namely the CBA. (Dkt. 104 at 8).

To state a claim for unjust enrichment under Illinois law, "a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *Chi. Faucet Shoppe, Inc. v. Nestle Waters N. Am. Inc.*, 24 F.Supp.3d 750, 763-64 (N.D. Ill. 2014) (quoting *HPI Health Care Srvs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill. 2d 145, 160 (1989)). "In Illinois[,] recovery for unjust enrichment is unavailable where the conduct at issue is the subject of an express contract between the plaintiff and the defendant." *Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 615 (7th Cir. 2013); *see also Nesby v. Country Mut. Ins. Co.*, 346 Ill. App. 3d 564, 567 (2004) (concluding "[w]here there is a specific contract that governs the relationship of the parties, the doctrine of unjust enrichment has no application.")

Thus, "[w]hen two parties' relationship is governed by contract, they may not bring a claim of unjust enrichment unless the claim falls outside the contract." *Util. Audit, Inc. v. Horace Mann Serv. Corp.*, 383 F.3d 683, 687-89 (7th Cir. 2004). The rationale behind prohibiting "a claim for unjust enrichment between contracting parties is to prohibit a party whose expectations were not realized under the contract from nevertheless recovering outside the contract." *Id.* at 688-89. The instant matter does not present such a case.

The parties concur that there is an agreement between them (the CBA). However, as explained above, the CTA's counterclaim does not appear, at this time, to require "administration or interpretation" of that agreement. Furthermore, the CTA has not identified any portion of the CBA that addresses their claim for unjust enrichment, nor have Counter-Defendants' described how this contractual agreement addresses the claims brought by the CTA.

"In determining whether a claim falls outside a contract, the subject matter of the contract governs, not whether the contract contains terms or provisions related to the claim." *Id.* at 689. Yet, in cases where it is, at a minimum, unclear whether the parties' contract addresses the subject matter of the unjust enrichment claim, and the parties "do not agree on the scope and terms of their contractual relationship," it would be "inappropriate to dismiss the unjust enrichment claim" at that point in litigation "on the basis of a specific contract." *In re Ventra Card Litig.*, No. 13 C 7294, 2015 WL 1843044, at *3 (N.D. Ill. Apr. 21, 2015); *see also Stevens v.*

*Interactive Fin. Advisors, Inc.*, No. 11 C 2223, 2012 WL 6568236, at \*6 (N.D. Ill. Dec. 17, 2012) (finding that when the parties' written agreement did not expressly address the question at issue, it would be premature to conclude that an unjust enrichment claim was barred even though a written contract existed between the parties); *Stripe Parking, LLC, v. Kiosk Info. Sys. Inc.*, No. 15 C 2557, 2015 WL 3631109, \*1 (N.D. Ill. June 10, 2010) (holding that "it would be inappropriate to conclude at this juncture that Kiosk's unjust enrichment claim is entirely barred by a specific contract" when Kiosk alleged "that at least some of the services it provided to Stripe fell outside the scope of the parties' agreement" and the parties did not agree "on the scope and terms of their contractual relationship"); *Thycon Const., Inc. v. Nat. Equip. Servs. Inc.*, No. 08 C 824, 2009 WL 723040, at \*3-4 (N.D. Ill. Mar. 2, 2009) (concluding that it was premature to dismiss the unjust enrichment claim on the basis of disputed language).

The CTA has adequately pleaded sufficient facts to demonstrate that Counter-Defendants unjustly retained a benefit to the detriment of the CTA and that Counter-Defendants' retention of such a benefit "violates the fundamental principles of justice, equity, and good conscience." Accordingly, Counter-Defendants' motion to dismiss Count I of the CTA's counterclaim is denied. Given this holding, the CTA's request for an opportunity to re-plead its unjust enrichment claim "in the alternative" (Dkt. 109 at 9) is denied as moot.

*B. Breach of Fiduciary Duty*

Count II of the CTA's counterclaim alleges that Counter-Defendants owed fiduciary obligations to the CTA and that Counter-Defendants violated those obligations "by engaging in unauthorized conduct on company time, overstating their hours and voluntarily accepting compensation and benefits for time they did not actually work." (Dkt. 98 at ¶ 27). Specifically, the CTA claims that Counter-Defendants went to the Electrical Breaker Room and remained there "for extend[ed] periods of time, well beyond any break periods" and while in the Electrical Breaker Room Counter-Defendants were sleeping, using their personal cell phones, using the computer for non-work related purposes, reading personal mail and newspapers, viewing pornography, and masturbating.[2] (Dkt. 98 at 4-7). Counter-Defendants agree that under Illinois law, "employees owe a duty of loyalty to their employer." (Dkt. 104 at 9). However, they argue that this Court should not expand the concept of fiduciary duty to include Counter-Defendants' "unauthorized conduct on company time," nor should the concept of fiduciary duty include overstating the number of hours an employee works and voluntarily "accepting compensation and benefits for time [those employees] did not actually work." (Dkt. 104 at 9-10); *see also* (Dkt. 98 at ¶ 27).

Under Illinois law, to establish a claim for breach of fiduciary duty, a party must establish that "(1) a fiduciary duty existed; (2) that duty was breached; and (3)

_____

[2] The listed activities are meant to serve as an example of some of Counter-Defendants' behavior as each Counter-Defendant allegedly engaged in different activities in the Electrical Breaker Room.

the breach of the duty proximately caused damages. *Chi. Title Ins. Co., v. Sinikovic*, No. 11 C 2504, 2015 WL 5116829, at *4 (N.D. Ill. Aug. 28, 2015) (citing *Gross v. Town of Cicero, Ill.*, 619 F.3d 697, 709 (7th Cir. 2010)). Illinois law recognizes that "employees[,] as well as officers and directors[,] owe a duty of loyalty to their employer." *Emanuel v. Rolling in the Dough, Inc.*, No. 10 C 2270, 2010 WL 4627661, at *5 (N.D. Ill. Nov. 2, 2010). Based on the relationship between the CTA and Counter-Defendants, it is apparent that as employees of the CTA, Counter-Defendants owed a duty of loyalty to their employer. "The scope of the duty of loyalty may vary depending on whether a corporate officer or an employee is involved[;]" however, Illinois courts have found that employees that improperly compete with their employer, engage in self-dealing, and misappropriate property or funds have breached their fiduciary duties, including their duty of loyalty owed to their employer. *See Beltran v. Brentwood N. Healthcare Ctr., LLC*, 426 F.Supp.2d 827, 831 (N.D. Ill. 2006) (citing *Foodcom Int'l v. Barry*, 328 F.3d 300, 304 (7th Cir. 2003)); *TMF Tool Co., Inc. v. Siebengartner*, 899 F.2d 584, 589 (7th Cir. 1990); *Ladenberger v. Gen. Signal Pump Grp./Aurora Pump*, No. 00 C 4054, 2001 WL 709488, at *5 (N.D. Ill. June 22, 2001); *RKI, Inc. v. Grimes*, 177 F.Supp.2d 859, 877 (N.D. Ill. 2001); *LaSalle Bank Lake View v. Seguban*, 937 F.Supp. 1309, 1324 (N.D. Ill. 1996); *ABC Trans Nat'l Transp. v. Aeronautics Forwarders, Inc.*, 62 Ill. App. 3d 671, 683 (1978).

Although some of Counter-Defendants alleged conduct while in the Electrical Breaker Room is highly unusual, their behavior amounts to negligent job performance, rather than disloyalty. *See Beltran*, 426 F.Supp.2d at 832 (finding that "sleeping on the job, like other forms of negligent or substandard job performance, is inherently dissimilar from the types of self-dealing scenarios that courts have recognized as forming the basis for viable breach-of-fiduciary-duty claims"); *compared to McLaughlin v. City of Chi. Transit Auth.*, 243 F.Supp.2d 778 (N.D. Ill. 2003) (holding that CTA employee breached her fiduciary duty to the CTA when she accessed and removed various confidential files to aid in developing her lawsuit against the CTA); *Ladenberger*, 2001 WL 709488, at \*5 (where a genuine issue of fact existed as to whether an employee breached his duty of loyalty when he took advantage of property or knowledge acquired in employer's business in order to profit at employer's expense); *RKI, Inc.*, 177 F.Supp.2d at 877 (concluding that employee breached duty of loyalty when, during the course of his employment, he downloaded confidential data and then later provided this data to benefit his new employer); *LaSalle Bank*, 937 F.Supp. at 1324 (court found employee breached her fiduciary duty when she embezzled bank's funds and bank suffered financial loss). Here, Counter-Defendants' behavior amounts to substandard job performance, rather than conduct that has been recognized as a "basis for [a] viable breach-of-fiduciary-duty claim[ ][,]" such as improperly competing with one's employer, engaging in self-dealing, or misappropriating property or funds. *See Beltran*, 426 F.Supp.2d at 831-32

(while substandard job performance may serve as "legitimate ground[s] for discipline, including termination," this does not mean "that an employee who fails to perform his job satisfactorily also should be subject to liability for breach of fiduciary duty").

The CTA attempts to distinguish such case law by arguing that the employee's conduct in *Beltran*, which included sleeping on the job, is different from Counter-Defendants' behavior. However, although some of Counter-Defendants' conduct is more disturbing than sleeping on the job, "[a]n employee who fails to perform his work—whether he spends his work sleeping on the job, day dreaming or surfing the internet—but still accepts his full paycheck simply is not comparable to an employee who embezzles from her employer." *Id.* Thus, Counter-Defendants' motion to dismiss Count II is granted.

### C. Fraudulent Misrepresentation

Count III of the CTA's counterclaim alleges that "Counter-Defendants made representations about the number of hours they worked knowing those representations to be false and with the intention of deceiving and inducing CTA to compensate them for time they did not perform any work on CTA's behalf." (Dkt. 98 at ¶ 32). Additionally, the CTA alleges that it "relied on Counter-Defendants to accurately report the actual hours they worked . . ." (Dkt. 98 at ¶ 33) and that the CTA experienced damages "as a direct and proximate result of Counter-Defendants' actions." (Dkt. 98 at ¶ 34). Counter-Defendants maintain that there is no Illinois case law to support the CTA's counterclaim for fraudulent misrepresentation. (Dkt. 104 at

10).  Thus, they argue that this Court should "decline to create a cause of action for the types of facts alleged in the CTA's counterclaim" and accordingly dismiss Count III of the CTA's counterclaim.  *Id.*

To establish a claim of fraudulent misrepresentation under Illinois law, a party must demonstrate "(1) [a] false statement of material fact[;] (2) known or believed to be false by the party making it; (3) intent to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage to the other party resulting from that reliance."  *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 569 (7th Cir. 2012).  When pleading a claim based on fraud, the complaining party must meet the heightened pleading standard of Rule 9(b), which requires a party alleging fraud or mistake to "state with particularity the circumstances constituting [the] fraud or mistake."  Fed. R. Civ. P. 9(b).  A complaint satisfies Rule 9(b) when it alleges "the who, what, when, where, and how" of the fraud.  *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) (quoting *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)).  While the circumstances constituting fraud must be pleaded with particularity, a defendant's "[m]alice, intent, knowledge and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).  A plaintiff satisfies Rule 9(b) when he provides a "general outline of the alleged fraud scheme" sufficient to "reasonably notify the defendants of their purported role" in the fraud.  *Midwest Grinding Co. Inc., v. Spitz*, 976 F.2d 1016, 1020 (7th Cir. 1992). "[F]air notice is '[p]erhaps the most basic consideration' underlying Rule 9(b) . . .".

*United States ex rel. Oughatiyan v. IPC The Hospitalist Co., Inc.*, No. 09 C 5418, 2015 WL 718345, at *6 (N.D. Ill. Feb. 17, 2015) (quoting *Vicom, Inc. v. Harbridge Merchant Srvs., Inc.* 20 F.3d 771, 777-78 (7th Cir. 1994)).

In the instant matter, the CTA has not only provided a "general outline of the fraud scheme" it has pleaded with particularity the identities of the individuals making the misrepresentations, the time and place surrounding the misrepresentations, the content of the misrepresentations, and the method by which the misrepresentations were conveyed. *See* Dkt. 98 at ¶ 18(a)-(o) and ¶¶ 30-35. Thus, the CTA has provided sufficient detail to provide Counter-Defendants with "fair notice" of their purported role in the fraud.

Although the CTA has satisfied the heightened pleading standard articulated by Rule 9(b), Counter-Defendants implore this Court to dismiss Count III based on the theory that the tort of fraudulent misrepresentation should not be expanded to apply to the present facts. The CTA responds that it "can point to at least one case in which a claim for fraud concerning misreported hours was brought against a former employee (Dkt. 109 at 8) citing *Naugle v. Kyler Bros. Srvs., Inc.*, No. 1:05-CV-0639TABRLY, 2006 WL 897884, at *3 (S.D. Ind. Mar. 31, 2006). In *Naugle*, the defendant alleged that "between August 2001 and January 2005, the Plaintiff knowingly and purposefully misrepresented the hours that he actually worked on his time sheet" and that he was "paid for work that was never performed . . .". *Id*. The court concluded that defendants pleaded sufficient facts to state a claim for fraudulent

misrepresentation. *Id*. Although *Naugle* applied Indiana law and, therefore, is not controlling, this Court finds it persuasive.

The Court also notes that, in Illinois, a claim for fraudulent misrepresentation "has generally been confined to remedying losses of commercial or financial character." *Doe v. Dilling*, 228 Ill. 2d 324, 344 (2008). In addition, while Illinois courts "have never recognized fraudulent misrepresentation in a setting that is 'purely personal' in nature" there are limited situations where Illinois courts have "recognized claims for fraudulent misrepresentation in settings that are not, strictly speaking, 'commercial' or 'financial' in nature." *Bonhomme v. St. James*, 2012 IL 112393, ¶ 35 (2012). The facts alleged in this case, demonstrate that Counter-Defendants' fraudulent misrepresentation is both commercial and financial in nature, making a claim for fraudulent misrepresentation a proper remedy. Moreover, as previously explained, the CTA has established the elements of fraudulent misrepresentation, and the CTA's claim for fraudulent misrepresentation is sought as a remedy to the commercial and financial losses caused by Counter-Defendants' misrepresentations. There is little doubt that Illinois courts would not extend the tort of fraudulent misrepresentation to a situation where the elements of such a cause of action have been satisfied. Therefore, Counter-Defendants' motion to dismiss Count III is denied.

*D. Conversion*

Finally, Count IV of the CTA's counterclaim alleges that Counter-Defendants converted the funds that were paid to Counter-Defendants as compensation.

However, Counter-Defendants argue that no claim for conversion can be made because the CTA voluntarily transferred property to Counter-Defendants, giving rise to a debtor-creditor relationship. (Dkt. 104 at 11). The CTA responds that, although it voluntarily compensated Counter-Defendants, the CTA was "deliberately misled" when it compensated Counter-Defendants for work that was never performed. (Dkt. 98 at ¶¶ 38-40). The CTA further argues that in the event that the Court finds there is no viable claim for conversion, the CTA should be permitted to amend the allegations of the counterclaim to specifically include facts which demonstrate that the CTA made a demand for return of the converted property. (Dkt. 109 at 10).

To establish a claim for conversion under Illinois law, a plaintiff must allege: " (1) an unauthorized and wrongful assumption of control, dominion, or ownership by the defendant over plaintiff's personality; (2) plaintiff's right in the property; (3) plaintiff's right to the immediate possession of the property, absolutely and unconditionally; and (4) a demand for possession of the property." *Cohen*, 735 F.3d at 614 (quoting *Gen. Motors Corp. v. Douglass,* 206 Ill. App. 3d 881, 885-86 (1990)). The Illinois Supreme Court has articulated that the subject of a conversion claim must be

> an identifiable object of property of which the plaintiff was wrongfully deprived. Money may be the subject of conversion, but it must be capable of being described as a specific chattel, although it is not necessary for purposes of identification that money should be specifically earmarked. However, an action for the conversion of funds may not be maintained to satisfy a mere obligation to pay money.

*Cohen*, 735 F.3d at 614 (quoting *In re Thebus*, 108 Ill.2d 255, 260 (1985)).

As Counter-Defendants correctly argue, "[t]here cannot be a conversion if one person voluntarily transfers property to another; in that situation, even if the transfer was mistaken, a voluntary transfer merely creates a debtor-creditor relationship." *Nelson v. Levy Home Entm't, LLC*, No. 10 C 3954, 2012 WL 403974, at *13 (N.D. Ill. Feb. 8, 2012)); *see also Cohen*, 735 F.3d at 614 (quoting *Douglass*, 206 Ill. App. 3d at 891) (holding that "[a] cause of action for conversion does not lie where the plaintiff 'voluntarily, albeit mistakenly transferred money'"); *Kuvedina, LLC v. Rakesh Pai*, No. 11-CV-2282, 2013 WL 6499696, at *4 (C.D. Ill. Dec. 10, 2013) (denying a claim for conversion where a former employer "alleged that Defendant was liable for conversion because Defendant 'fraudulently collected monies and converted the Plaintiff's monies without performing work as agreed upon in the contract'"); *Tahir v. Import Acquisition Motors, LLC*, No. 09 C 6471, 2010 WL 2836714, at *6 (N.D. Ill. July 15, 2010) (finding that "[c]ourts have consistently held that there is no conversion where one has *voluntarily* transferred money to another").

In the instant case, the CTA voluntarily paid Counter-Defendants for the work they performed. Therefore, the CTA's claim for conversion fails. The CTA's request for leave to amend the allegations in the counterclaim to include facts that demonstrate that the CTA made a demand for the return of the funds paid to Counter-Defendants is superfluous, as the basis for dismissing the CTA's claim for conversion

lies in the fact that the CTA voluntarily compensated Counter-Defendants.  Although the CTA compensated Counter-Defendants despite their allegedly fraudulent misconduct, it did so voluntarily.  The CTA has thus alleged only a "general debt arising from fraudulent conduct," not a claim for conversion.  *See Adams v. Pull'r Holding Co., LLC.*, No. 09 C 7170, 2010 WL 1611078, at *4 (N.D. Ill. Apr. 20, 2010) ("Rather than stating a cognizable claim for conversion, defendants have alleged a general debt arising from fraudulent misconduct owed by plaintiff to defendants.").  Therefore, Count IV of the CTA's counterclaim is dismissed with prejudice.

## CONCLUSION

For the aforementioned reasons, Counter-Defendants' motion to dismiss is granted in part; Counts II and IV of the CTA's counterclaim are dismissed with prejudice.  The motion is otherwise denied.  It is so ordered.

_____

Charles P. Kocoras
United States District Judge


Dated:  1/13 /2016